Argued and submitted August 24, 2004, affirmed March 23, 2005

In the Matter of the Compensation of
Timothy E. Hammock, Claimant.

Timothy E. HAMMOCK,
*Petitioner,*

*v.*

SAIF CORPORATION
and H & R Baling,
*Respondents.*

01-07092; A120640

108 P3d 1185

James C. Egan argued the cause for petitioner. With him on the briefs was Kryger, Alexander, Egan & Elmer.

David L. Runner argued the cause and filed the brief for respondents.

Before Wollheim, Presiding Judge, and Edmonds, Judge,* and Deits, Judge pro tempore.

WOLLHEIM, P. J.

---

* Edmonds, J., *vice* Leeson, J. pro tempore.

## WOLLHEIM, P. J.

Claimant seeks judicial review of a Workers' Compensation Board order denying him temporary disability benefits as of August 3, 2001. We review for errors of law, ORS 656.298(7); ORS 183.482(8), and affirm.

Claimant, a truck driver for H & R Baling (employer), suffered a compensable left shoulder injury in December 2000. SAIF, employer's insurer, accepted the claim. On June 1, 2001, after a tear in claimant's left rotator cuff tendon had been surgically repaired, claimant's physician released claimant to modified work at S & J Thrift Center (S & J) under the restriction that claimant could sort only small and light items. On June 6, 2001, claimant began working for S & J.

On July 6, claimant's physician released claimant to return to modified work. The physician allowed claimant to lift 25 to 30 pounds and did not restrict him from lifting above shoulder level. Claimant returned to work for employer. On July 19 and 23, claimant was treated for an exacerbation of his injury. Also, on July 23, claimant's physician determined that claimant should return to the more restricted light-duty work that he had engaged in before being released to return to modified work for employer. Thereafter, on July 26, claimant accepted a written offer of modified employment at S & J.

On July 30, 2001, Senate Bill (SB) 485 became effective. *See* Or Laws 2001, ch 865. That bill amended ORS 656.268(4) to allow a worker to refuse an offer of modified employment without termination of his or her temporary total disability benefits if the offer "[i]s not with the employer at injury," ORS 656.268(4)(c)(C), or "[i]s not at a work site of the employer at injury," ORS 656.268(4)(c)(D).[1]

On August 2, claimant's physician revised claimant's work restriction, indicating that claimant could not use

---

[1] The text of the 2001 amendments to ORS 656.268(4) is contained in Oregon Laws 2001, chapter 865, section 12. The legislature also amended ORS 656.268(4) in 2003. Or Laws 2003, ch 811, § 11. Because those 2003 amendments do not affect the issues in this case, we cite the current version of the statute, which reflects the pertinent 2001 amendments.

his left arm at or above shoulder level. Thereafter, claimant refused to continue the modified work available at S & J.

In its order denying claimant temporary total disability benefits, the board reasoned:

"On June 1, 2001, [claimant's physician] released claimant for modified work at [S & J]. Claimant commenced work at S & J on June 6, 2001. On August 2, 2001, [claimant's physician] revised claimant's work restriction such that he could not use his left arm at or above shoulder height. Thereafter, claimant declined to continue the modified work available at S & J.

"* * * * *

"In *Gerardo Cruz-Lopez*, 54 Van Natta 1716, 1719 (2002), we held that the amendments made to ORS 656.268(4) by SB 485 apply to modified job offers made after July 30, 2001.[2] Here, the modified job offer was made in June 2001, which was prior to July 30, 2001. Therefore, based on the reasoning expressed in *Cruz-Lopez*, we conclude that the amendments to ORS 656.268(4) by SB 4[85] are not applicable to this claim. 54 Van Natta at 1719. We turn to whether the job at S&J qualified as 'modified work' pursuant to ORS 656.268(4) (1999).

"We have previously addressed this issue in *Penny G. Elliott*, 53 Van Natta 575 (2001)[, *aff'd*, *Elliott v. SAIF*, 182 Or App 384, 52 P3d 447 (2002)]. There, the attending physician released the claimant to modified work and approved

---

[2] In *Cruz-Lopez*, the claimant refused an offer of modified employment in November 2000 because he lacked adequate transportation to the work site, and the employer stopped paying temporary disability benefits. In June 2001, an administrative law judge (ALJ) concluded that the claimant was not entitled to those benefits. On appeal to the board, the claimant argued that the 2001 amendments to ORS 656.268(4) applied to his refusal of the offer in November 2000 and that, because his refusal was proper under those amendments, he was entitled to benefits. The board concluded that "the language of *amended* ORS 656.268(4)(c) supports the conclusion that the amendments apply to modified job offers made after July 30, 2001, the effective date of Senate Bill 485" and that, "[b]ecause there is no evidence that the legislature intended the amendments to ORS 656.268(4)(c) to apply retroactively, we are not persuaded by claimant's argument that those amendments apply to this case." *Cruz-Lopez*, 54 Van Natta at 1719 (emphasis board's). The board also quoted various statements that were made during the legislative hearings concerning the 2001 amendments. Those statements indicated that the amendments applied to offers made after the law's effective date and were not intended to allow a worker who had accepted an offer of modified employment to quit.

a modified job description for work at the same alternative work site (S&J) as the present case. Analyzing the text and context of ORS 656.268(4)(c) (1999), we concluded the statute did not necessarily require that the claimant 'return to modified work' for the employer at injury. 53 Van Natta at 576. Further finding that an offer of modified work at the thrift center was, in fact, a legitimate job, we concluded that the modified work offered at the alternative work site was appropriate 'modified employment' pursuant to ORS 656.268(4) (1999). 53 Van Natta at 577.

"Here, it is uncontested that claimant's 'physician-approved' modified job was at the same alternative work site to which the claimant in *Elliott* was released. Furthermore, claimant does not dispute that our decision in *Elliott* is controlling. Accordingly, we reject claimant's assertion that the job at S&J did not qualify as 'modified work' under ORS 656.268(4) (1999)."

On review, claimant's first assignment of error is that the board erred in failing "to order the insurer to pay time loss to Petitioner commencing August 3, 2001." Claimant asserts that the 2001 amendments to ORS 656.268(4) were procedural in nature and, for that reason, applied to all cases after their effective date (*i.e.*, July 30, 2001). Claimant contends that, because he "received no offer to work for his employer, H & R Bailing,[*sic*] after his doctor changed his restrictions on August 2, 2001," and "[t]he only offer for work involved activities 'not with the employer at injury' at S & J," the modified employment with S & J was unsuitable and the 2001 amendments gave him "sole discretion" to "refuse unsuitable work at any time after the bill was signed."[3] Claimant also assigns as error the board's failure "to assess penalties pursuant to ORS 656.262(11) against the insurer for its unreasonable refusal to pay time loss benefits."

---

[3] Claimant also argues that, although he "clearly stated that *Elliott* [*v. SAIF*, 182 Or App 384, 52 P3d 447 (2002),] was controlling with regard to time loss before August 1, 2001," "[t]he Board mistakenly concluded that [he] had conceded that *Elliott* * * * was controlling on the issue of time loss after August 2, 2001." The board, however, did not conclude that claimant had made such a concession. Instead, the board concluded that the 2001 amendments to ORS 656.268 did not apply to claimant's case based on its reasoning in *Cruz-Lopez*; thus, its reasoning in *Elliott* concerning the 1999 version of the statute, which claimant had conceded controlled his entitlement to benefits before August 1, necessarily controlled his entitlement as of August 3.

In response, SAIF argues that, because the 2001 amendments were substantive in nature, ORS 656.202(2) requires the application of the law in effect at the time of the injury giving rise to claimant's right to compensation.[4] In other words, according to SAIF, the 2001 amendments do not apply in this case. Additionally, SAIF asserts that ORS 656.325(5)(a) (1999) provided "independent authority for SAIF's refusal to pay the additional time loss demanded by claimant in this case regardless of whether the 2001 amendments to ORS 656.268(4)(c) also apply."[5] Finally, SAIF contends that, because claimant was not entitled to the temporary disability benefits that he sought, the court should reject claimant's request for a penalty against SAIF for the unreasonable refusal to pay benefits. Alternatively, SAIF contends that, if claimant was entitled to the temporary disability benefits that he sought, the court (1) should not award a penalty because, as a matter of law, SAIF had a legitimate doubt as to whether it was obligated to pay or (2) should remand the case to the board to determine whether SAIF's failure to pay was reasonable.

The gravamen of the parties' arguments on review in this court concern whether the 2001 amendments to ORS 656.268(4) were procedural or substantive in nature and whether they applied to claimant's case in August 2001 when he refused to continue the modified employment at S & J. We need not address those arguments, however, because, as we

---

[4] ORS 656.202(2) provides:

"Except as otherwise provided by law, payment of benefits for injuries or deaths under this chapter shall be continued as authorized, and in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred."

[5] ORS 656.325(5) (1999) provided, in part:

"Notwithstanding ORS 656.268:

"(a) An insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 when an injured worker refuses wage earning employment prior to claim determination and the worker's attending physician, after being notified by the employer of the specific duties to be performed by the injured worker, agrees that the injured worker is capable of performing the employment offered."

ORS 656.325(5) was amended in 2001 and 2003, but those amendments either do not apply or are not pertinent to the issues in this case. Or Laws 2003, ch 811, §§ 13, 14, 32; Or Laws 2001, ch 865, §§ 13, 22.

will explain, assuming that the 2001 amendments to ORS 656.268(4) applied to claimant's case in August 2001, they did not allow him to refuse to continue the modified work at S & J at that time.

As pertinent to this case, the legislature amended ORS 656.268(4) in 2001 to provide:

"Temporary total disability benefits shall continue until whichever of the following events first occurs:

"* * * * *

"(c) The attending physician or nurse practitioner who has authorized temporary disability benefits for the worker under ORS 656.245 advises the worker and documents in writing that the worker is released to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment. However, an offer of modified employment may be refused by the worker without the termination of temporary total disability benefits if the offer:

"* * * * *

"(C) Is not with the employer at injury;

"(D) Is not at a work site of the employer at injury[.]"

As we have explained, claimant *accepted* an offer of modified employment at S & J on July 26. Nonetheless, claimant asserts that, under the terms of the 2001 amendments to ORS 656.268(4), he had "sole discretion" to refuse to continue the modified work at S & J *at any time* after those amendments became effective on July 30, 2001. We disagree. The statute states that a worker who receives a written offer of modified employment may refuse that offer under certain circumstances without the termination of his or her temporary total disability benefits. The board found that claimant initially began working for S & J on June 6. The board also adopted the ALJ's findings that, thereafter, claimant returned to work for employer, suffered an exacerbation of his injury, was again released for modified work, and, finally, accepted the offer of modified employment at S & J on July 26. The board did not find that there were any other written offers of modified employment with S & J after July 26. Further, on review, claimant does not assert that he was entitled

to a new written offer of employment because of the additional work restriction that his physician imposed on August 2. In short, because there was no written offer of modified employment for claimant to refuse after the effective date of the 2001 amendments to ORS 656.268(4), the provision as amended does not assist him.

Claimant takes the position that the amended version of ORS 656.268(4) allows him to refuse to continue the modified work that he had previously accepted at S & J. We reject that contention. As we have said, the text of the statute allows a worker to refuse an "offer of employment" without loss of benefits under certain conditions. It does not address the circumstance of a worker who refuses to work after accepting an offer of employment. To the extent that there is any ambiguity in the text of the statute, there is legislative history specifically stating that the amendment was not intended to permit a worker to *quit* a job that did not meet the conditions of the statute. Tape Recording, Senate Committee on Business, Labor and Economic Development, SB 485, Mar 14, 2001, Tape 49, Side B (testimony of Jerry Keene).

We hold for the reasons explained that the board did not err in refusing to order SAIF to pay the benefits that petitioner sought. Accordingly, there is no need for us to address claimant's second assignment of error concerning whether the board should have assessed a penalty against SAIF for unreasonably refusing to pay benefits.

Affirmed.